**UNITED STATES DISTRICT COURT FOR**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 26-cv-25485-JB**

MANUEL PEDRO IGLESIAS PEREZ,

Petitioner,

v.

WARDEN, Federal Detention Center
Miami, *et al.*,

Respondents.
_____________________________________/

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

**THIS CAUSE** comes before the Court upon Petitioner Manuel Pedro Iglesias Perez's Verified Petition for Writ of Habeas Corpus (the "Petition"). ECF No. [1]. Respondents filed a Response in Opposition to the Petition, ECF No. [6], and Petitioner filed a Reply ("Reply"), ECF No. [7]. Upon due consideration of the parties' submissions, the pertinent portions of the record, and the applicable law, for the reasons explained below, the Petition is **GRANTED IN PART**.

## I. BACKGROUND

Petitioner is a native and citizen of Cuban who was paroled into the United States on October 13, 1975, pursuant to the provisions of the Cuban Adjustment Act of 1966 (the "CAA"). ECF No. [5-6]. He adjusted his status to that of a Lawful Permanent Resident, which was retroactive to and effective as of October 13, 1974, pursuant to the CAA. *Id.*

On December 5, 1990, Petitioner was convicted in the United States District Court for the Southern District of Florida for the offense of Conspiracy to Import

Cocaine, Conspiracy to Possess with Intent to Distribute, Possession with Intent to Distribute Cocaine, and sentenced to 324 months of imprisonment. ECF Nos. [6-1] ¶ 7; [6-2] at 3. Petitioner was also convicted for the offense of False Statement to U.S. Customs Officials and sentenced to 5 years of imprisonment. ECF Nos. [6-1] ¶ 7; [6-2] at 3.

On or about March 14, 2012, Petitioner was encountered during a Federal Bureau of Prisons Operation program. ECF Nos. [6-1] ¶ 8. He was determined to be removable and scheduled to be released from the Bureau of Prisons. *Id.* On June 7, 2013, Petitioner was transferred into the custody of Immigration and Customs Enforcement ("ICE"). *Id.* at 9. On the same date, Petitioner was served with a Notice to Appear (the "NTA"). ECF No. [5-1]. The NTA charged Petitioner with removability under Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (the "INA"), codified at 8 U.S.C. § 1227(a)(2)(A)(iii), which provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." *Id.*; 8 U.S.C. § 1227(a)(2)(A)(iii); *see also* 8 U.S.C. § 1101(a)(43)(B) (defining "aggravated felony" to include the "illicit trafficking of a controlled substance … including a drug trafficking crime").

On June 13, 2013, an Immigration Judge ordered Petitioner removed to Cuba. ECF No. [5-4]. Petitioner waived his right to appeal, resulting in a final administrative order of removal. *Id.* He remained in custody until June 18, 2013, when he was released on an Order of Supervision ("OSUP"). ECF Nos. [5-2]; [5-3]; [5-5]. Petitioner's Order of Supervision states, "Because the U.S. Department of Homeland Security has not effected [Petitioner's] deportation or removal during the

period proscribed by law, it is ordered that [Petitioner] be placed under supervision and permitted to be at large under [certain specified] conditions[,]" including reporting to DHS as requested and scheduled. ECF No. [5-5]. During the time that Petitioner was on an OSUP, he reported to DHS on numerous occasions, approximately once per year. ECF No. [6-6].

On November 4, 2025, Petitioner was encountered by ICE ERO during his scheduled appointment and taken into custody. ECF No. [5-6] at 2. That same day, Petitioner was provided with a Notice of Revocation of Release, informing him that his OSUP had been revoked and noting that "there is a significant likelihood of removal in the reasonably foreseeable future." ECF No. [5-7].

On December 16, 2025, Petitioner was denied repatriation to Cuba. ECF No. [6-1] ¶ 16. On January 9, 2026, Petitioner was served with a Notice of Removal, stating that ICE intends to remove him to Mexico. *Id.* ¶ 17; ECF No. [5-9]. On August 6, 2026, Petitioner was served with second Notice of Removal, stating again that ICE intends to remove him to Mexico. ECF Nos. [6-1] ¶ 23; [5-14]. On the same date, Petitioner was served with a Notice of Failure to Comply pursuant to 8 CFR § 241.4(g), which states: "On [August 6, 2026, Petitioner was] issued a Notice of Removal advising [him] that it was the intention of [ICE] to remove Petitioner to Mexico. On [August 6, 2026, Petitioner] refused to sign such form to effectuate [his] removal, which is one of the requirements for [his] removal to Mexico." ECF No. [5-15]. To date, Petitioner remains detained at the Miami Federal Detention Center in Miami, Florida. ECF No. [5-2].

Petitioner filed the instant Petition on August 13, 2026. ECF No. [1]. In Count I, Petitioner alleges that his continued detention is unlawful under 8 U.S.C. § 1231(a)(6) and *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) because Petitioner has been detained for more than nine months and there is no significant likelihood that he will be removed in the reasonably foreseeable future. *Id.* at 9–10. As to the unlikelihood of his removal, Petitioner asserts that (1) he has been subject to a final order of removal since June 13, 2013, and following that order, Respondents exercised their detention authority but did not effectuate Petitioner's removal and ultimately released him on an Order of Supervision; (2) he remained under ICE supervision for approximately twelve years, and during that time, ICE knew his whereabouts and required him to appear for scheduled appointments, but failed to effectuate his removal; and (3) despite more than nine months of detention, Respondents have still not effectuated his removal. *Id.* Petitioner also asserts that he "does not possess a valid Cuban passport and has been unable to obtain one" and "Respondents have not obtained the travel documents necessary to effectuate his removal to Cuba, have not provided Petitioner with a scheduled removal date or travel itinerary, and have not identified any country that has agreed to accept him for removal." *Id.* at 10. In Count II, Petitioner asserts a Fifth Amendment due process claim, alleging that "[i]n light of Respondents' longstanding inability to execute Petitioner's removal, … Petitioner's continued confinement no longer bears a reasonable relationship to the regulatory purpose of effectuating his removal." *Id.* at 13. Petitioner seeks, among other relief, an order requiring that Respondents release Petitioner under appropriate conditions of supervision. *Id.* at 14.

Respondents filed a Response to the Petition. ECF No. [6]. Respondents argue that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1231. *Id.* at 4. Respondents acknowledge that Petitioner has been detained longer than the six months found to be presumptively reasonable in *Zadvydas* but argue that the removal period should be tolled because "Petitioner's own conduct has obstructed his removal and caused the delay of which he now complains." *Id.* at 5–6. More specifically, Respondents argue that "his refusal to sign the Notice of Removal to Mexico has delayed his removal." *Id.* at 6. Respondents further argue that "Petitioner cannot meet his burden of proof to establish that his removal will not occur in the reasonably foreseeable future." *Id.* Respondents assert that "Petitioner's removal remains likely assuming [his] cooperation." *Id.* In support of this assertion, Respondents rely upon the declaration of a deportation officer, which provides that "Mexico routinely accepts Cuban nationals for removal without a need for travel documents" and "[o]nce Petitioner signs the Notice of Removal and otherwise cooperates with ERO's efforts to remove him, ICE ERO expects to remove Petitioner within weeks." *Id.* (citing ECF No. [6-1] ¶¶ 27, 29).

In Reply, Petitioner asserts that "[t]he record does not support [Respondents'] conclusion" that "removal to Mexico remains foreseeable and that Petitioner has delayed removal…." ECF No. [7] at 1. Petitioner explains that "ICE first served Petitioner with a Notice of Removal to Mexico on January 9, 2026" and "Respondents identify no refusal to sign that notice, communication with Mexican authorities, Mexican acceptance, scheduled removal, or attempted removal during the nearly seven months that followed." *Id.* at 1, 5–6. Petitioner acknowledges that on August

6, 2026, "ICE serve[d] a second Notice and issue[d] a Notice of Failure to Comply based on Petitioner's refusal to sign." *Id.* at 1, 6. Petitioner, however, asserts that his refusal to sign in August "does not explain the preceding seven months without an attempted to removal." *Id.* at 1, 6. In addition, Petitioner argues that the declaration of a deportation officer provided by Respondents is insufficient to establish that his removal is significantly likely because the deportation officer "identifies no communication with Mexican authorities concerning Petitioner, Mexican acceptance, or concrete removal arrangements." *Id.* at 1, 3–5.

## II. ANALYSIS

The Court has jurisdiction over a Petitioner's habeas claim that the length of his detention violates due process. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."). Title 8 U.S.C. § 1231(a)(1) requires the Government to effectuate an alien's removal within a ninety-day "removal period." 8 U.S.C. § 1231(a)(1). During this removal period, the Government must detain the alien. 8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the Attorney General shall detain the alien."). The government may detain an alien beyond the ninety-day removal period only for a length of time "reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689.

In *Zadvydas*, the Supreme Court considered the petitions of two resident aliens who challenged the constitutionality of their detentions pursuant to 8 U.S.C. § 1231(a)(6), which permits the Government to detain an alien subject to a final order

of removal beyond the 90-day statutory removal period set forth in § 1231(a)(1). *Id.* at 682. Although no country was willing to accept either alien once they were ordered removed, the Government continued to detain them after the expiration of § 1231(a)(1)'s 90-day removal period. *Id.* at 684-86. The Supreme Court held that a detainee may file a petition for writ of habeas corpus to challenge the reasonableness of their continued detention when the Government is unable to effectuate removal within the 90-day removal period. *Id*. at 687.

The Supreme Court further held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute" because "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Id*. at 690, 699. In so ruling, the Supreme Court explained that it is presumptively reasonable for the Government to detain an individual for a period of six months while it effectuates that individual's removal. *Id.* at 701. That said, after this six-month period, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute" and grant the petition for writ of habeas corpus, "conditioned on any of the various forms of supervised release that are appropriate in the circumstances . . . ." *Id.* at 699–700.

Accordingly, to state a valid claim under *Zadvydas*, a petitioner must show (1) "post removal order detention in excess of six months," and (2) "a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thereafter, the burden shifts to Respondents to "respond with evidence sufficient to rebut that

showing." *Id.* (quoting *Zadvydas*, 533 U.S. at 701 ("After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.").

Here, the first prong is met given that Petitioner has been in custody since November 4, 2025, which is more than six months from when he filed the Petition. *See* ECF No. [6-1] ¶ 13; *Akinwale*, 287 F.3d at 1052 ("This six-month period thus must have expired at the time Akinwale's § 2241 petition was filed in order to state a claim under *Zadvydas*.").

Respondents argue that the Court should toll the removal period because "Petitioner's own conduct has obstructed his removal and caused the delay which he now complains." ECF No. [6] at 5–6. The conduct Respondents point to as evidence of delaying his removal is "his refusal to sign the Notice of Removal to Mexico." *Id.* at 6. As mentioned, Petitioner was served with two Notices of Removal to Mexico. ECF Nos. [5-9]; [5-14]; [6-1] ¶¶ 17, 23. Petitioner was served with the first Notice of Removal to Mexico on January 9, 2026. ECF Nos. [5-9]; [6-1] ¶ 17. Respondents neither argue nor present any evidence to suggest that Petitioner refused to sign the first Notice of Removal to Mexico. Eight months later, on August 6, 2026, Petitioner was served with a second Notice of Removal to Mexico. ECF Nos. [5-14]; [6-1] ¶ 23. Because Respondents only evidence of Petitioner "obstruct[ing] his removal" is his refusal to sign the second Notice of Removal to Mexico—served over nine months after Petitioner was detained—the Court declines to toll the removal period.

As to the second prong, the Court has no evidence on which to find that there is a significant likelihood of removal to any country in the reasonably foreseeable future. On January 9, 2026, Respondents notified Petitioner that they intended to remove him to Mexico. ECF Nos. [5-9]; [6-1] ¶ 17. Again, Respondents do not argue or present any evidence to suggest that Petitioner refused to sign the first Notice of Removal to Mexico. Nor do they identify any other acts by Petitioner that obstructed his removal in the nearly seven months before he refused to sign the second Notice of Removal to Mexico. Notwithstanding, Respondents contend that "Petitioner's removal remains likely assuming [his] cooperation," ECF No. [6] at 6. Respondents rely on the declaration of a deportation officer, which provides that "Mexico routinely accepts Cuban nationals for removal without need for travel documents" and "[o]nce Petitioner signs the Notice of Removal and otherwise cooperates with ERO's efforts to remove him, Petitioner is expected to be removed within weeks of such cooperation." ECF No. [6-1] ¶¶ 27–29. However, given that Respondents failed to remove Petitioner to Mexico in the nearly seven months following the first Notice of Removal to Mexico (which there is no evidence that Petitioner refused to sign), the generalized statements provided by the deportation officer do not provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *See Akinwale*, 287 F.3d at 1052; *Losada Diaz v. Parra*, No. 25-22624-CV, 2026 WL 1223375, at *4 (S.D. Fla. Jan. 25, 2026) (determining that the respondents failed to provide evidence rebutting Petitioner's showing that his removal is not imminent" where the respondents merely cited "the declaration of a deportation officer, who describes how the 'Government of Mexico has agreed to

accept the repatriation of Cuban citizens with final orders of removal from the United States'" but "set forth no specific plan for Petitioner's proposed repatriation, nor … state[d] that Mexico has actually agreed to accept Petitioner"); *Fuentes v. Ripa*, No. 26-CV-134-MMH-PDB, 2026 WL 717982, at *3, n.7 (M.D. Fla. Mar. 16, 2026) ("Simply providing [Petitioner] with a notice of removal to a third country does not show a 'significant likelihood' that he will be removed to that country in the reasonably foreseeable future."); *Arenado-Borges v. Bondi*, No. 2:25-CV-02193-JNW, 2025 WL 3687518 (W.D. Wash. Dec. 19, 2025) ("[S]tanding alone, the fact that removals to a particular country are in fact occurring, says nothing about whether Mexico will accept [Petitioner] any time soon.").

Given that Petitioner has been detained in excess of six months and the Court has no evidence on which to find that there is a significant likelihood of removal to any country in the reasonably foreseeable future, the Court finds that Petitioner has stated a claim under *Zadvydas* and Respondents must afford him an individualized bond hearing. *See Benitez v. Wallis,* 402 F.3d 1133, 1135 (11th Cir. 2005) (holding that an inadmissible alien can no longer be detained beyond the statutory 90-day removal period of § 1231(a)(1), where there was no significant likelihood of removal in the reasonable foreseeable future); *Martinez-Marino* v. *Sheriff of Baker's County Sheriff's Office*, No. 3:25-CV-854-JEP-MCR, 2026 WL 681812 (M.D. Fla. Mar. 11, 2026) (granting petition under *Zadvydas* for failure to show reasonable likelihood of removal where petitioner, who had been detained "more than eight months beyond the six-month period," asserted that "ICE has not identified any agreement with a third country to accept him, requested travel documents, or provided a timeline for

potential third-country removal" and "Respondents have not provided any evidence to suggest that ICE has actually communicated with Mexico or any other third country regarding Petitioner."); *Hernandez v. ICE*, No. 3:26-CV-8-MMH-MCR, 2026 WL 776166 (M.D. Fla. Mar. 19, 2026) (granting petition under *Zadvydas* for failure to show reasonable likelihood of removal); *see also Rivero-Cuervo v. Bondi,* No. 3:26-CV-78-JEP-LLL, 2026 WL 741648 (M.D. Fla. Mar. 17, 2026) (granting habeas petition pursuant to *Zadvydas* where counsel for respondents concede that he "has no information to indicate that there is any significant likelihood of removal in the reasonably foreseeable future in this case."); *Haghnejad v. Rhoden*, No. 3:26-CV-1-MMH-PDB, 2026 WL 496774 (M.D. Fla. Feb. 23, 2026) (granting Iranian petitioner's habeas petition after "Respondents have failed to show a significant likelihood that [Petitioner] will be removed in the reasonably foreseeable future."); *Joseph v. Rhoden*, No. 3:25-CV-1579-MMH-PDB, 2026 WL 262589 (M.D. Fla. Feb. 2, 2026); *Ferrer v. Barr*, No. 19-25265-CIV, 2020 WL 13548087 (S.D. Fla. Apr. 14, 2020) (granting petition where respondents failed to rebut petitioner's showing that removal was unlikely in the foreseeable future); *Mitchell v. Gonzales*, No. 4:06CV333-WS, 2007 WL 121348 (N.D. Fla. Jan. 12, 2007) (granting petition where respondents did not present evidence showing a significant likelihood of removal in the reasonably foreseeable future).

## III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Petition, ECF No. [1], is **GRANTED IN PART**. Accordingly, Respondents shall promptly afford Petitioner an individualized bond hearing within seven days of this Order or otherwise release Petitioner.

2. Respondents shall, within 24 hours of the bond hearing, file a Status Report indicating the outcome of the bond hearing and, if release on bond is denied, the reason(s) for the denial.

3. Any remaining claims in the Petition are **DISMISSED WITHOUT PREJUDICE**.

4. Any pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 27th day of August, 2026.

**JACQUELINE BECERRA**
**UNITED STATES DISTRICT JUDGE**